[Docket Nos. 66, 69, 72, 73, 89, 92, 93, 105]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

CHRISTIANA ITIOWE,

        Plaintiff, appearing *pro se*,

  v.

DONALD J. TRUMP, *et al.*,

        Defendants.

Civil No. 20-18516 (RMB/SAK)

**OPINION**

**APPEARANCES**

John A. Ruymann
Office of the U.S. Attorney
402 East State Street, Suite 430
Trenton, NJ 08608

    *On behalf of Defendant Donald J. Trump*

Jill R. O'Keeffe
Orlovsky, Moody, Schaaff & Conlon, LLC
187 Highway 36, Suite 1A
West Long Branch, NJ 07764

    *On behalf of Defendant Atlanticare Regional Medical Center Mainland Campus*

Hellen C. Tuckett
New Jersey Office of the Attorney General
Division of Law, Tort Litigation, & Judiciary Section
124 Halsey Street, 5th Floor
Newawk, NJ 07101

    *On behalf of Deputy Attorney General Defendants Amanda Paoletti and Alexa Makris, as well as Division of Child Protection and Permanency Defendants Joel Mastromarino, Megan Kellerman, Cynthia Fabrizio, Tonya Montgomery, Jada Andrews, Trixie Jeanmary (incorrectly pled as Trixie Mary Jean), and Patricia Young*

Peter Sosinski
Office of the Attorney General of New Jersey
Division of Law, Tort, Litigation & Judiciary
25 Market Street, 2nd Floor, West Wing
P.O. Box 116
Trenton, New Jersey 08625

> *On behalf of Office of the Law Guardian Defendant Judith Okoro*

Justine M. Longa
New Jersey Office of the Attorney General
Department of Law and Public Safety
25 Market Street
P.O. Box 116
Trenton, New Jersey 08625

> *On behalf of Defendant the Honorable Pamela Darcy*

**BUMB, U.S. District Judge**

This matter concerns a *pro se* litigant's repeated attempts to create a federal appeal out of child removal proceedings in state family court. Pending now before the Court are several motions to dismiss brought by the following named defendants: (1) Deputy Attorneys General Amanda Paoletti and Alexa Makris (together, the "DAG Defendants") with certain caseworkers/employees from the New Jersey Division of Child Protection and Permanency Joel Mastromarino, Megan Kellerman, Cynthia Fabrizio, Tonya Montgomery, Jada Andrews, Trixie Jeanmary (incorrectly pled as "Trixie Mary Jean"), and Patricia Young (together, the "DCP&P Defendants") [Docket No. 66]; (2) Defendant Judith Okoro of the Office of the Law Guardian ("Okoro") [Docket No. 69]; (3) Atlanticare Regional Medical Center Mainland Campus ("Atlanticare") [Docket No. 72]; (4) former President of the

2

United States, Donald J. Trump ("Trump") [Docket No. 73]; and (5) the Honorable Pamela Darcy, Family Court Judge in the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic/Cape May Vicinage, Atlantic County ("Judge Darcy," and together with the DAG Defendants, the DCP&P Defendants, Okoro, Atlanticare, and Trump, the "Defendants"). [Docket No. 89.] For the reasons set forth below and having afforded Plaintiff ample opportunities to set forth her claims, the Court will **GRANT** the Defendants' pending motions and dismiss the claims asserted by Christiana Itiowe ("Plaintiff"), with prejudice.

## I.      BACKGROUND

### A.      Procedural History

Plaintiff, appearing *pro se*, filed the initial Complaint on December 8, 2020. [Docket No. 1.] On January 22, 2021, Plaintiff filed an Amended Complaint. [Docket No. 8.] Plaintiff then filed a Second Amended Complaint on February 26, 2021. [Docket No. 25.]

After a series of initial motions to dismiss [Docket Nos. 11, 12, 17, 19, and 28], this Court issued an Opinion and Order, dated September 29, 2021, dismissing Plaintiff's claims, without prejudice [Docket Nos. 56, 57]. In its earlier Opinion, the Court explained that "it is readily apparent that Plaintiff's *pro se* Amended Complaint is incurably deficient on multiple grounds." [Docket No. 56, at 8.] Nevertheless, in "recogni[tion of] the admonitions given by the Court of Appeals for the Third Circuit" regarding *pro se* litigants, the Court afforded Plaintiff a final

opportunity to set forth her claims by filing "no more than three (3) pages succinctly stating what her claims are, a brief summary of the facts supporting her claims, and against which defendants" each claim is asserted. [Docket No. 56, at 10–11.]

The Court also previously denied Plaintiff's Motion to File a (Third) Amended Complaint and add two additional defendants to this suit, David Westman (another proposed DCP&P defendant) and the Honorable Judge Rodney Cunningham of the New Jersey Superior Court, Criminal Division, Atlantic County ("Judge Cunningham"). [Docket No. 46.] The Court ruled that adding these two proposed defendants to the present suit would be an "exercise in futility as it relies on the same barebones allegations" by Plaintiff, and because such individuals "presumably posses[s] Eleventh Amendment immunity and judicial immunity." [Docket No. 56, at 9–10.]

On October 5, 2021, Plaintiff filed her three (3) page submission in response to the Court's prior Opinion and Order. [Docket No. 58.] Defendants now move for dismissal of Plaintiff's claims against them, with prejudice. [Docket Nos. 66, 69, 72, 73, and 89.]

### B.    Plaintiff's Three (3) Page Submission Specifying Her Claims

Despite this Court's earlier denial of Plaintiff's Motion to File an Amended Complaint to add two additional defendants [Docket No. 46], Plaintiff nevertheless discusses potential claims against both David Westman and Judge Cunningham in her three (3) page submission. [Docket No. 58, at 2–4.] However, because the Court did not permit Plaintiff to file a Third Amended Complaint or add these two

individuals to the present suit, the Court need not consider Plaintiff's summary of her alleged claims against such individuals in connection with this suit.[1] The Court also incorporates its previous finding—that allowing Plaintiff to add her proposed claims against David Westman or Judge Cunningham would be a futile exercise, as Plaintiff has set forth no new factual bases for her proposed claims against these two individuals, who are also presumably immune from the current suit pursuant to Eleventh Amendment immunity and, in the case of Judge Cunningham, judicial immunity.

Plaintiff's three (3) page submission sets forth the following factual allegations against the Defendants, summarized below:

- Atlanticare
  Plaintiff gave birth to her son at Atlanticare on May 22, 2019, and was discharged days later on May 24, 2019. [Docket No. 28, at 2.] During her time at the hospital, Plaintiff shared "concerns about mold in some of [Plaintiff's] items at home with some nurses and a social worker . . . one of these hospital personnel . . . wrongfully called child abuse hotline and made frivolous complaints against [Plaintiff's] mental health . . . reporting that [Plaintiff is] too fixated on [the] topic of mold so therefore, [Plaintiff has] mental health issues." [*Id.*] Plaintiff alleges that the call to the child abuse hotline by a hospital staff member occurred on the day she was discharged, May 24, 2019. [*Id.*]

- DAG Defendants, DCP&P Defendants, and Okoro
  Following the "frivolous complaint filed by the hospital . . . stated agency and cited government personnel's, [sic] utilized my mental health diagnosis against [Plaintiff] illegally removing [Plaintiff's] son from [her] care and home using

---

[1] Since the Court did not permit Plaintiff to amend her Complaint to add her proposed claims against Judge Cunningham, her request for default judgment against him "for the damage amount of $400 million," as well as Plaintiff's contention that Judge Cunningham "deliberately did not return the waiver of summons," are without merit. [Docket No. 77, at 1.]

[the] Atlantic [C]ity [P]olice [D]epartment to remove him." [*Id.*] Plaintiff also alleges that "stated government personnel's [sic]" wrongly included her son's biological father, Jabore Majors, "as a defendant in the family court case." [*Id.*] Plaintiff's son was allegedly removed from her home and care in July 2019 and was placed "at a stated lesbian married gay couple home against [Plaintiff's] wishes," where he remains. [*Id.*] Plaintiff alleges that the "mold issue rectified on May 24, 2019," but these Defendants refused to release her son to her at such time. [*Id.*] Plaintiff also broadly alleges that upon commencing this action in federal court "all stated government personnels . . . ignored and violated [Plaintiff's] rights as [she] handle[d] matters prose [sic] at the [U]nited [S]tates [D]istrict [C]ourt of [N]ew [J]ersey by not consulting with their attorney as rightfully demanded and or ending the case due to federal violations cited." [*Id.* at 3.]

- Trump
  Plaintiff alleges that beginning with her son's unlawful removal from her home and care in May 2019, she began to handle a variety of matters concerning government misconduct, including abuse of power, fraud, and corruption, "at various courthouse[s] . . . at the house of representative capitol hill, us house judiciary committee, us dept of justice Washington dc [sic], the white house and the FBI office." [*Id.*] Plaintiff also alleges that in 2020, she "approached the white house via letter seeking help as [she] asked the president for an executive order to have [her] son released [sic]." [*Id.*] However, "Mr. Donald Trump, did not respond nor act on stated matter of gross violation & injustice. With the fact of not responding or stepping in to end it, he allowed those unlawful acts and torture to [Plaintiff], [her] son[,] and [her] mental health diagnosis to continue [sic]." [*Id.*]

- Judge Darcy
  Plaintiff alleges that Judge Darcy inappropriately "utilized [her] mental health diagnosis" by "illegally having [her] son remain removed from [her] care and home." [*Id.* at 2.] Plaintiff also alleges that the family court also "illegally utilized [her] mental health diagnosis . . . by allowing Jobore Majors, [her] son's father, to be noted as a defendant in the family court." [*Id.*]

In addition to the above factual allegations, Plaintiff also specified in her three (3)

page submission that she is asserting the following causes of action:

- Violation of 42 U.S.C. § 1983 ("Section 1983"), asserted against the DCP&P Defendants, Okoro, the DAG Defendants, Judge D'Arcy, and Trump;

- Violation of 42 U.S.C. § 12101, the Americans with Disabilities Act, asserted against Atlanticare, the DCP&P Defendants, Okoro, the DAG Defendants, and Judge D'Arcy; and

- Violations of the U.S. Constitution—including First Amendment Violation ("religious expression rights and freedom to the press"), Fourth Amendment Violation (not specified), Fifth Amendment Violation ("deprived of life, liberty, property, without due process law"), and Fourteenth Amendment Violation (not specified), asserted against the DCP&P Defendants, Okoro, the DAG Defendants, Judge D'Arcy, and Trump; First and Fourteenth Amendment violations also asserted against Atlanticare.

[*Id.* at 2–3.]

In her three (3) page submission, Plaintiff states that the injuries she suffered include "[s]evere emotional distress and trauma," impacting both her mental and physical health and causing her to "experience[e] some hair loss, as such, some of my dreadlocks fell out from its roots," as well as violations of her parental rights, interference with her bonding time with her newborn son, being "sent to the wrong doctor (a psychiatrist) on June 21, 2019[,] to recommend release of my son, my son being deliberately kept away from me for the past 2 years and some months due to stated evaluation," and a need to attend therapy given the ongoing stress and trauma she has experienced. [*Id.* at 4.]

Finally, Plaintiff describes the relief she seeks in her three (3) page submission: that her son be returned to her home and care; that her son's medical records, dental records, shot records, and the names and addresses of her son's pediatricians be released to her immediately; and that the car seat, stroller, and diaper bag stolen from her when her son was removed be replaced. [*Id.*] Plaintiff also seeks monetary

damages in the amount of $400 million from each of the following Defendants: Atlanticare, the DCP&P Defendants, the DAG Defendants, Judge D'Arcy, Okoro, and Trump.[2] [*Id.*]

## II.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (first citing *Conley*

---

[2] This Court recognizes that it has an obligation to consider whether the competency of a litigant might be an issue. *See Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 149 (3d Cir. 2021) (explaining that "[a] district court must invoke Rule 17 sua sponte and consider whether to appoint a representative for an incompetent person when there is verifiable evidence of incompetence") (citations and quotations omitted). Here, there is no such verifiable evidence, and the Court is satisfied that Plaintiff's concerns have already been addressed by the state family court, which has had familiarity with Plaintiff and her claims. Thus, the Court is satisfied that the issue of competency has been adequately considered.

*v. Gibson*, 355 U.S. 41, 47 (1957); then citing *Sanjuan v. Am. Bd. of Psychiatry &*

*Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); and then citing *Papasan v. Allain*, 478

U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009)). A court may "generally

consider only the allegations contained in the complaint, exhibits attached to the

complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir.

2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff

will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claim." *Twombly*, 550 U.S. at 563, n.8 (quoting *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly*

expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the

coffin for the 'no set of facts' standard that applied to federal complaints before

*Twombly*."). "A motion to dismiss should be granted if the plaintiff is unable to plead

'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (quoting *Twombly*, 550 U.S. at 570).

Importantly, "[i]n considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Dickerson v. New Jersey Inst. of Tech.*, 2019 WL 6032378, at *4 (D.N.J. Nov. 14, 2019) (citations omitted).  This more liberal construction of *pro se* complaints does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'") (citations omitted); *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("[c]omplaints filed *pro se* are construed liberally, but even 'a *pro se* complaint must state a plausible claim for relief.'") (citing *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## III.   ANALYSIS

### A.   Plaintiff Has Not Pled a Plausible Claim for Relief Against Any Defendant

Despite giving Plaintiff another opportunity to set forth her claims, the Court finds that Plaintiff has, once again, failed to state a plausible claim for relief. The Court agrees with the argument raised by the DAG Defendants and the DCP&P

Defendants: Plaintiff's three (3) page submission "merely rehashes the same previously submitted claims, purported proofs, and citations." [Docket No. 66-1, at 12.]

Plaintiff's extensive number of pleadings and miscellaneous letters filed with the Court in this matter, including her three (3) page submission, are riddled with unintelligible assertions that fail to state a federal claim.[3] For example, Plaintiff vaguely asserts that she is entitled to relief under the Americans with Disabilities Act ("ADA") despite never alleging how Defendants interfered with any specific right secured by the ADA. [*See supra* at 18–19.] In fact, Plaintiff's purported claims are comprised of vague and conclusory Constitutional and federal statutory challenges, including purported violations of the Fourth, Fifth, and Fourteenth Amendments, as well as the ADA and Section 1983. However, Plaintiff has not pled sufficient facts to support any such violations of her Constitutional or statutory rights as a matter of federal law. To put it simply, given the factual allegations pled by Plaintiff in support of her claims, as well as the applicable legal doctrines discussed below, the Court is "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim

---

[3] In a series of letters filed with the Court, Plaintiff asserts a host of allegations that are completely unrelated to the allegations set forth in the Complaint, Amended Complaint, and Second Amended Complaint. For example, Plaintiff alleges that she was "deliberately attack[ed]" by government personnel who were "closing & fixing roads that apparently needed no fixing wasting tax payers money [sic];" that a singer exploited Plaintiff's life by including information about Plaintiff's life in song lyrics; that her car was stolen while she was working as a food delivery person; and that her sister was "brutally attacked by 3 [T]renton police." [Docket No. 83, at 2–3, 5.] These allegations are not only unrelated to the present action, but also fail to state a federal claim by Plaintiff.

which would entitle [her] to relief." *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

Like her prior amended pleadings, Plaintiff's three (3) page submission fails to set forth a plausible claim for relief. Therefore, the Court incorporates its prior finding "that the Plaintiff's pleadings 'lack a short and plain statement' of the grounds for [the Court's] jurisdiction and fail to 'state a claim to relief that is plausible on its face.'" [Docket No. 56, at 8 (citing *Iqbal*, 556 U.S. at 678).] The Court also incorporates it other, earlier finding that Plaintiff failed "to provide Defendants with fair or adequate notice of the claims against them or establish that Plaintiff is entitled to relief as required by Federal Rule of Civil Procedure 8(a)(2)." [Docket No. 56, at 8 (citing *Twombly*, 550 U.S. at 555).]

## B.   The *Rooker-Feldman* Doctrine Bars Plaintiff's Claims

Not only are Plaintiff's claims insufficiently pled and unsupported by factual allegations that give rise to any of the Constitutional or federal statutory claims she alleges, but it is also readily apartment that Plaintiff's claims and the alleged injuries that she sustained all stem from the same issue previously identified by this Court: "Plaintiff's dissatisfaction with the outcome of a child custody proceeding in New Jersey state family court." [Docket No. 56, at 9.] Under the *Rooker-Feldman* doctrine, District Courts are prohibited from exercising jurisdiction over and reviewing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi*

*Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Plaintiff's case falls squarely within the category of cases barred from District Court review by the *Rooker-Feldman* doctrine.

Plaintiff alleges that her parental rights were "wrongfully terminated" by Judge D'Arcy of the New Jersey Superior Court, Family Division, Atlantic County, on November 20, 2020. [Docket No. 8, at 8.] Plaintiff initiated the present, federal action just a few weeks later on December 8, 2020. [Docket No. 1.] The Court maintains its earlier position that "Plaintiff's suit appears to be a surreptitious attempt by an unsuccessful state court litigant to circumvent the appellate process at the state court level," and that "[a]s a matter of law, this Court lack authority to review and reject the state court's findings, and the state court's judgment is final." [Docket No. 56, at 9.]

In one of her opposition pleadings, Plaintiff seems to suggest that because her state family court proceedings are still ongoing and since she is seeking monetary damages, the *Rooker-Feldman* doctrine is inapplicable because her "lawsuit is not asking the court to overturn or vacate the family courts judgment or to act as an appeal court." [Docket No. 74, at 2.] However, in that same pleading, Plaintiff asks "[i]n the land of the USA, is any allowed to take my child away from me and keep him away from me this long?" [*Id.* at 4.] In unfortunate and sad circumstances such as this, the answer to Plaintiff's question is "yes," but the circumstances under which state child protective services may remove a child from a parent or guardian are squarely governed by applicable state law and any Plaintiff's position that such course of action is inappropriate is an issue left to the state family courts, whose

13

decisions over such matter this Court does not have the authority to review on appeal.

Even if the family court erred, as Plaintiff suggests ("an error exist[s] . . . that's why mistrial exist[s]"), Plaintiff's recourse would be an appeal in state court. Nowhere in Plaintiff's pleadings, including her three (3) page submission, does Plaintiff indicate that she ever appealed the termination of her parental rights to the Superior Court of New Jersey Appellate Division, and such an appeal appears to be the actual relief that Plaintiff seeks. However, the DAG Defendants and the DCP&P Defendants are also correct: an appeal of the custody determination in family court "remains with the New Jersey state court system, and ultimately, the United States Supreme Court, not this Court." [Docket No. 66-1, at 16.] Thus, the Court finds that the *Rooker-Feldman* doctrine provides another basis that warrants dismissal of Plaintiff's claims, with prejudice.

### C. State Officials Acting Within Their Official Capacities are Immune from the Present Suit

As discussed above in connection with the *Rooker-Feldman* doctrine, Plaintiff is essentially asking the Court to overturn the termination of her parental rights by Judge D'Arcy of the New Jersey Superior Court, Family Division, Atlantic County. Defendants make several related arguments regarding their immunity from this suit, considering that most of the individuals named as defendants in the present suit are implicated for actions taken within their official capacities as agents/employees of the State of New Jersey (the "State") or applicable State agencies that work to protect

14

the welfare of children. The DAG Defendants "are employed by the New Jersey Office of the Attorney General [and] are assigned to represent the interests of the Division of Child Protection and Permanency." [Docket No. 66-1, at 1.] Similarly, the DCP&P Defendants work within a division of the New Jersey Department of Children and Families, "a state agency charged with protecting the health and welfare of New Jersey's youth." [*Id.*]

### 1.    Eleventh Amendment Sovereign Immunity

As raised by the DAG Defendants, the DCP&P Defendants, and Judge D'Arcy, Eleventh Amendment sovereign immunity is applicable and bars Plaintiff's claims against them in the present action. [*Id.* at 17; Docket No. 89-1, at 15–17.] Eleventh Amendment sovereign immunity "has been interpreted to render states— and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Howard v. New Jersey Div. of Youth & Fam. Servs.*, 398 F. App'x 807, 812 (3d Cir. 2010) (citations omitted) (dismissing damages and attorney fees claims against the New Jersey Division of Youth and Family Services—now the Division of Child Protection and Permanency—because the agency was "immune from suit under the Eleventh Amendment"). Here, Plaintiff has pled no facts that would implicate the DAG Defendants, the DCP&P Defendants, or Judge D'Arcy other than through their official conduct as State officials. Thus, her claims against them equate to

Constitutionally impermissible claims against the State and must be dismissed.[4]

### 2. Absolute Immunity, the Litigation Privilege, and Judicial Immunity

The Court finds that the related doctrines of absolute immunity and judicial immunity are also appliable and bar Plaintiff's claims. Absolute immunity bars Plaintiff's claims against Defendant Okoro because she acted within her official capacity as "a staff attorney from New Jersey's Office of Public Defender in the Office of the Law Guardian unit . . . appointed by the court to represent the best interests of Plaintiff's son" in the family court proceedings. [Docket No. 69-1, at 9.] The Third Circuit has recognized the critical importance of absolute immunity for state-appointed, child welfare attorneys like Okoro:

> In the absence of absolute immunity, we would expect suits in retaliation for the initiation of dependency proceedings to occur with even greater frequency than suits against prosecutors. Parents involved in seemingly unjustified dependency proceedings are likely to be even more resentful of state interference in the usually sacrosanct parent-child relationship than are defendants of criminal prosecution.

*Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 496–97 (3d Cir. 1997).

Relatedly, under New Jersey's litigation privilege, statements made by attorneys "in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." *Peterson v. Ballard*, 679 A.2d 657, 659 (App.

---

[4] The Court is satisfied that none of the exceptions to the doctrine of sovereign immunity are applicable. *See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (explaining that "Eleventh Amendment sovereign immunity is . . . subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law") (citations omitted).

Div. 1996) (citations omitted). The application to remove Plaintiff's child from her custody and care as part of state family court proceedings—an application that was put in motion by the DCP&P Defendants' investigation and a recommendation eventually made by the DAG Defendants to Judge D'Arcy with the input of Okoro—all constitute communications protected by the litigation privilege, and thus, cannot serve as the basis for Plaintiff's claims.

With respect to Judge D'Arcy, in particular, it is also well-established that "a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). The Court further agrees with Judge D'Arcy that presiding over the child removal proceedings before her in family court was a clearly "judicial" act, and that she generally had subject matter jurisdiction in deciding the custody case before her in family court.  Accordingly, the DCP&P Defendants, the DAG Defendants, Okoro, and Judge D'Arcy are immune from suit under the doctrine of absolute immunity, as well as the related doctrines of absolute judicial immunity and New Jersey's litigation privilege, as applicable, given the facts pled by Plaintiff.

### 3.    Qualified Immunity

The DAG Defendants and the DCP&P Defendants have also raised qualified immunity as an affirmative defense. [Docket No. 66-1, at 22–27.] As discussed above, Plaintiff has failed to state a plausible claim for which relief can be granted. [*See infra* at 10–11.] Relatedly, Plaintiff has failed to meet her burden and plead that any of the Defendants violated a "clearly established statutory or constitutional

righ[t] of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The State actors involved with the child removal proceedings appear to have all reached the same conclusion, ultimately confirmed by Judge Darcy's ruling. Even taking all of Plaintiff's allegations as true, the Court finds that Plaintiff has failed to plead that the DAG Defendants and DCP&P Defendants acted unreasonably in any way in carrying out the mission of their respective State agencies or interfered with any of her clearly established rights (*i.e.*, to investigate a child's welfare and petition for the removal from unfit homes when applicable). Plaintiff's claims against the DAG Defendants and the DCP&P Defendants are also barred by the doctrine of qualified immunity.

### D.   Plaintiff's Statutory Claims Are Insufficiently Pled as a Matter of Law and Fail to State a Claim

Plaintiff's amended pleadings also fail to state a plausible claim for relief for either of the federal statutory claims brought under Section 1983 and the ADA.

#### 1.   Plaintiff's Has Failed to State a Plausible Section 1983 Claim

None of the Defendants against whom Plaintiff has alleged a Section 1983 claim against—the DAG Defendants, the DCP&P Defendants, Okoro, Trump, or Judge D'Arcy, each acting in their official capacities—qualify as a "person" amenable to suit under the statute. "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). While

Section 1983 "provides a federal forum to remedy many deprivations of civil liberties . . . [it] does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that "neither a State nor its officials acting in their official capacities are "persons" under [Section] 1983"). Because Plaintiff's Section 1983 allegations only challenge actions taken by applicable Defendants acting within their official capacities, Plaintiff has failed to state a plausible claim for relief under Section 1983.

### 2.    Plaintiff Has Failed to State a Plausible Claim Under the ADA

Plaintiff's only other federal statutory claim arises under the ADA against Atlanticare, the DCP&P Defendants, the DAG Defendants, and Okoro. Under the ADA, it is unlawful for any place of public accommodation to "discriminat[e] against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiff alleges that, after she gave birth to her son, some hospital staff member of Atlanticare "wrongfully called child abuse hotline and made frivolous complaints against my mental health diagnosis, reporting that [I] am too fixated on [the] topic of mold so therefore, I have mental health issues." [Docket No. 58, at 2.]

Plaintiff is unable to overcome the threshold inquiry to bring a claim under the ADA, which requires Plaintiff to plead that she is an individual who has "(A) a

19

physical or mental impairment that substantially limits one or more major life activities…; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's amended pleadings fail to establish that Plaintiff suffered from any specific mental health impairment impacting Plaintiff's ability to perform a major life activity. Further, Plaintiff's amended pleadings not only fail to identify any public service, program, or activity that Plaintiff was denied, but also do not identify a major life activity that Plaintiff is substantially limited in carrying out because of her purported disability status. Plaintiff even goes as far as suggesting that she was **wrongly accused** of having mental health issues by the Atlanticare employee who allegedly reported her to a child abuse hotline, which only undermines her potential claims under the ADA. Thus, the Court also finds that Plaintiff has failed to set forth a plausible claim for relief under the ADA.

## IV.   CONCLUSION

Plaintiff's amended pleadings fail to set forth a short and plain statement showing that she is entitled to relief for any of her Constitutional or federal statutory claims. Plaintiff's claims are also barred by the *Rooker-Feldman* doctrine, and most of the Defendants are immune from this suit under the doctrines of Eleventh Amendment sovereign immunity, qualified immunity, and/or absolute immunity, including the related doctrines of absolute judicial immunity and New Jersey's litigation privilege. Plaintiff has also failed to plead a plausible claim for relief for her federal statutory claims under Section 1983 and the ADA.

Accordingly, this action shall be **DISMISSED WITH PREJUDICE**. An

accompanying Order of today's date shall issue.

<u>December 14, 2022</u>                              <u>s/Renée Marie Bumb</u>
Date                                                    Renée Marie Bumb
                                                        U.S. District Judge

21